FILED
2019 Jan-11 PM 12:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JENNIFER SMITH, | ] | |
| Plaintiff, | ] ] ] | |
| v. | ] ] | 2:17-cv-01320-ACA |
| CITY OF PELHAM, et al., | ] ] | |
| Defendants. | ] | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on Defendants City of Pelham and Larry Palmer's motion to dismiss and/or motion for partial summary judgment on Counts Three, Four, and Five of the second amended complaint (doc. 60), and Mr. Palmer's motion to dismiss Counts Three, Four, and Five of the second amended complaint (doc. 62).

Plaintiff Jennifer Smith was a city employee working in the Pelham Police Department. Mr. Palmer, the Chief of Police, ordered a warrantless search of her work computer. Unbeknownst to Ms. Smith, her work computer contained backup copies of her personal cell phone and, based at least in part on photographs found on those backups, Mr. Palmer suspended and later terminated Ms. Smith's employment. Ms. Smith filed suit, asserting various claims against both Mr. Palmer and the City of Pelham. Of relevance to these motions, she claims that

Defendants (1) subjected her to an unconstitutional search of her personal cellphone, in violation of the Fourth Amendment ("Count Three"); (2) deprived her of due process, in violation of the Fourteenth Amendment ("Count Four"); and (3) invaded her privacy, in violation of Alabama law ("Count Five"). (Doc. 59 at –63). Defendants do not seek dismissal of or summary judgment on Counts One and Two, so the court will not discuss those claims.

Because Ms. Smith lacked an objectively reasonable expectation of privacy in the backup copies of her cell phone, the court **GRANTS** summary judgment in favor of Defendants and against Ms. Smith on Count Three. Because Defendants provided Ms. Smith with all the process she was due during her appeal of her termination, the court **GRANTS** summary judgment in favor of Defendants and against Ms. Smith on Count Four. And because Defendants obtained only information that they properly accessed through Ms. Smith's work computer, the court **GRANTS** summary judgment in favor of Defendants and against Ms. Smith on Count Five.

I. **BACKGROUND**

A motion to dismiss constrains the court to consider, with limited exceptions, only the allegations made in the complaint, *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012), but a motion for summary judgment requires the court to consider evidence submitted by the parties, *see*

2

*Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012). Setting out the facts in this case is complicated because the City of Pelham and Mr. Palmer moved both to dismiss and for summary judgment on Counts Three, Four, and Five. (Doc. 60). At the same time, Mr. Palmer also filed a separate motion to dismiss, asserting that he is entitled to qualified immunity from Counts Three and Four, and state agent immunity from Count Five. (Doc. 62). Although the court set out two separate briefing schedules (docs. 64, 65), Ms. Smith responded to both motions in one filing, adopting and incorporating by reference evidence that she had submitted to the court during an earlier round of motions practice. (Doc. 67).

For the sake of simplicity, and because the court concludes that it can resolve the claims against both defendants based on the joint motion for summary judgment, the court will use the summary judgment standard. Accordingly, the court draws its description of the facts from the evidence, drawing all inferences and reviewing all evidence in the light most favorable to Ms. Smith. *See Hamilton*, 680 F.3d at 1318.

The City of Pelham is a governmental municipal corporation in Shelby County, Alabama. (Doc. 59 at 40 ¶ 207). From November 2003 until October 2015, Ms. Smith was the Executive Administrative Assistant to the Chief of Police of the City of Pelham, a position that made her a permanent employee in the City

of Pelham's classified service. (*Id.* at 4 ¶ 14, 40 ¶ 209, 51 ¶ 259, 53 ¶ 269). Mr. Palmer became the Chief of Police in March 2015. (Doc. 13-1 at 2).

The City of Pelham has a "Civil Service Law Handbook," which sets out "provisions with respect to appointment, career development, removal, discipline, and related conditions of employment in the classified service." (Doc. 13-7 at 1, 3). The Handbook provides that the Chief of Police is a Department Head and, as such, an "appointing authority." (*Id.* at 8–9). Under the policies set out in the Handbook, an appointing authority may dismiss, demote, or suspend an employee within the classified service "for cause or for any reason deemed to be in the best interest of the public service." (*Id.* at 43). Either before or on the date of the dismissal, the appointing authority must give the employee written notice of dismissal, including "[t]he cause of action," the effective date of the dismissal, and "[a]ny other information deemed appropriate."[1] (*Id.* at 44).

A permanent employee may appeal a dismissal or suspension to the Personnel Board (doc. 13-7 at 45), which is tasked with reviewing, approving, disapproving, or modifying administrative actions (*id.* at 15). On receipt of an appeal, the Board must hold a public hearing to determine whether the employee should be retained "or should be removed or otherwise disciplined." (*Id.* at 45).

---

[1] The only provision in the Handbook about the requirements for suspension relates to suspension without pay. (Doc. 13-7 at 44). The record confirms that Ms. Smith's suspension was with pay. (Doc. 13-1 at 6; *see also* Doc. 37 at 8).

4

In addition to the Handbook, the City of Pelham has a "Social Networking Policy," which sets out guidelines for public employees' use of social networking websites (doc. 13-3 at 2–3), and a "Computer/Email & Internet Use Policy" (the "Computer Policy"), which governs employees' use of the City's computer systems (doc. 13-5 at 2–4). The Computer Policy provides in relevant part:

> All software, programs, applications, templates, data and data files residing on computer systems or storage media or developed on the city's systems are property of the City of Pelham . . . . The City of Pelham, therefore, may access, copy, change, alter, modify, destroy, delete or erase this property.

(Doc. 13-5 at 2–3).

From as early as 2007, Ms. Smith and Mr. Palmer clashed. (Doc. 59 at 5–6; Doc. 37-1 at 6–7). Ms. Smith filed complaints against Mr. Palmer before he became the Chief of Police in March 2015. (Doc. 37-3 at 17–18). For his part, Mr. Palmer attested that shortly after he became the Chief of Police, he began to suspect that Ms. Smith was performing work for her secondary employer while on the clock at the Police Department and that she was misusing her sick and leave time. (Doc. 13-1 at 2–3). He also asserts that he received complaints about Ms. Smith's activity on Facebook. (*Id.* at 3–4). As a result, he states, on an undisclosed date, he ordered an investigation into Ms. Smith's use of social networking sites and leave time. (*Id.* at 4).

Around the same time, Mr. Palmer denied one of Ms. Smith's requests to use her compensation time. (Doc. 37-1 at 3). Based on that denial, on September 2, 2015, she filed with the City of Pelham Human Resources Department a complaint of sex discrimination against Mr. Palmer. (*Id.*). Mr. Palmer received notification of the complaint on the same day. (*Id.*).

Eight days later, on September 10, 2015, Mr. Palmer ordered Detective Patrick McGill to review Ms. Smith's work computer. (Doc. 13-1 at 5; Doc. 37-3 at 20). Two dayslater, Detective McGill imaged her computer and found backup copies of Ms. Smith's personal cell phone. (Doc. 37-3 at 20–21). Those backup copies contained nude photographs of Ms. Smith and other people. (*Id.* at 21). Detective McGill testified that the only way the computer could have backed up Ms. Smith's cell phone was if she had plugged her phone into her computer. (*Id.* at 21–22). Ms. Smith later testified that she had connected her cell phone to her computer for work purposes, but she had not known that the computer would make backup copies of her phone. (Doc. 37-3 at 29–31, 113; *see also* Doc. 59 at 44 ¶ 228). The backup copies were accessible to anyone on the City network with administrator privileges. (Doc. 37-3 at 131–33).

On September 24, 2018, Mr. Palmer met with Ms. Smith and Human Resources Director Janis Parks. (Doc. 37-1 at 5). At the meeting, he informed Ms. Smith that he was placing her on administrative leave with pay pending

6

completion of an internal investigation. (*Id.*; Doc. 13-1 at 6). On October 1, 2015, Mr. Palmer held another meeting with Ms. Smith and Ms. Parks. (Doc. 37-1 at 5; Doc. 13-1 at 6). At that meeting, he offered her the opportunity to resign and "not face these circumstances," but she apparently declined to resign. (*See* Doc. 37-3 at 14). As a result, Mr. Palmer "verbally terminated [her] from the City of Pelham Police Department effective that day, October 1, 2015, for violation of the Internet policy and conduct unbecoming of an employee." (Doc. 37-1 at 5–6). Mr. Palmer did not give her any other information about the reasons for her termination.[2] (*Id.* at 6).

At some point after the meeting, Mr. Palmer drafted a Disciplinary Action Notification identifying the reasons for termination, which he dated October 1, 2015. (Doc. 13-1 at 7; Doc. 13-6 at 2). The Notification states that Mr. Palmer recommended and approved the recommendation to dismiss Ms. Smith for conduct unbecoming an employee in the public service and violation of the Social Networking and Computer Policies. (Doc. 13-6 at 2–3). The Notification includes a handwritten note by Mr. Palmer that the "[f]orm was completed after an initial meeting with [Ms. Smith]." (*Id.* at 3). Although Mr. Palmer signed the form, Ms. Smith did not. (*Id.*).

---

[2] Although Mr. Palmer disputes Ms. Smith's testimony that he did not give her any information about the investigation at either the September 24 or the October 1 meeting, at this stage the court must accept Ms. Smith's testimony about what Mr. Palmer told her. *See Hamilton*, 680 F.3d at 1318.

7

The parties have not pointed to evidence in the record establishing when Mr. Palmer or the City gave Ms. Smith a copy of the Notification, but according to her second amended complaint, she did not receive the Notification until October 15, 2015, after she filed an appeal of her termination. (Doc. 59 at 54 ¶ 273). Before the hearing, Ms. Smith requested copies of her personnel file and all documents relating to her termination, but Human Resources Director Janis Parks provided only excerpts of her personnel file. (Doc. 37-1 at 9; Doc. 59 at 55 ¶¶ 277–78).

The Personnel Board held a hearing on October 28, 2015. (Doc. 37-3 at 2). Ms. Smith was represented by counsel, who was allowed to question witnesses, including Ms. Smith, Mr. Palmer, and Detective McGill. (*See generally* Doc. 37-3). During the hearing, Mr. Palmer acted hostile toward Ms. Smith and her attorney. (Doc. 37-1 at 11; Doc. 37-3 at 17, 66). In addition, Ms. Smith asserts that the Personnel Board did not allow her attorney to pursue a line of questioning about her complaint of discrimination against Mr. Palmer. (Doc. 67 at 18; *see* Doc. 37-3 at 18–19, 51–53). But the record shows that the Board questioned Ms. Parks, the Department's Human Resources Director, about that complaint at length, and Ms. Smith's attorney was able to draw the Board's attention to the temporal proximity between Ms. Smith's complaint of discrimination and Mr. Palmer's order to search her work computer. (Doc. 37-3 at 100–11).

On November 5, 2015, Ms. Parks sent Ms. Smith a letter stating that the Personnel Board had affirmed her dismissal because it was "of the opinion that substantial evidence supports the City's dismissal decision." (Doc. 13-8 at 2). The Civil Service Law Handbook provides that "[t]he decision of the Board . . . shall be final subject to appeal by either party to the Circuit Court to review questions and whether or not the decision or order of the Board is supported by substantial evidence legally received by the Board." (Doc. 13-7 at 48). Defendants contend that Ms. Smith did not appeal the Board's decision (doc. 61 at 17), and Ms. Smith has not controverted that assertion.

## II. DISCUSSION

The City and Mr. Palmer seek summary judgment on Counts Three, Four, and Five—Ms. Smith's claims that they subjected her to an unconstitutional search (Count Three), deprived her of due process (Count Four), and invaded her privacy (Count Five). (Docs. 60, 62). The court will address each count separately.

<u>1.</u>     <u>Count Three (Fourth Amendment Claim)</u>

The Fourth Amendment guarantees that people shall "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment's prohibition against unreasonable searches and seizures protects an individual in those places where [she] can demonstrate a reasonable expectation of privacy against government

9

intrusion." *United States v. King*, 509 F.3d 1338, 1341 (11th Cir. 2007) (quotation marks omitted). The Amendment applies "without regard to whether the government actor is investigating crime or performing another function," including acting as an employer. *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 756 (2010).

An individual has a reasonable expectation of privacy only if she can establish both a subjective expectation of privacy in the object of the search and "that society is prepared to recognize as reasonable" the expectation of privacy. *Id.* (quotation marks omitted). And if an individual lacks a reasonable expectation of privacy, she cannot challenge the search. *Id.*; *see also Presley v. United States*, 895 F.3d 1284, 1290 (11th Cir. 2018) ("[S]tanding under the Fourth Amendment is not jurisdictional; instead, we analyze it as a merits issue.").

The City and Mr. Palmer assert that Ms. Smith had no subjective expectation of privacy because the City's Computer Policy provided that the City had a right to monitor all users of City computing systems. (Doc. 61 at 10–12). Alternatively, they argue that the search was objectively reasonable because Mr. Palmer was investigating whether Ms. Smith had violated City policies regulating leave time, social networking, and secondary employment. (*Id.* at 13–14).

Ms. Smith does not contend that she had an expectation of privacy in her work computer; instead, she "focuses, not on the examination of the contents of her business computer, but the further intrusion into the contents of what Defendants

knew was Smith's personal cell phone." (Doc. 67 at 6). She argues that her employer would not be permitted to conduct a warrantless search of her cell phone merely because it was located in her work office, so it could not search the electronic copy of her cell phone merely because it was saved on her work computer. (*Id.* at 7–9). Ms. Smith's position is unavailing.

The Eleventh Circuit has held that a person lacks an objectively reasonable expectation of privacy in computer files that he inadvertently shared over a computer network. *United States v. King*, 509 F.3d 1338, 1342 (11th Cir. 2007). In *King*, the criminal defendant—a civilian contractor for the military—connected his personal laptop to a governmental network, exposing his hard drive to anyone who had access to the network. *Id.* at 1339–40. Although the defendant believed that he had protected his files using security settings, an airman using the network found pornographic files and reported that discovery to a military investigator, leading to a search of the laptop computer and hard drive through the network. *Id.* at 1340–41. The Eleventh Circuit noted that, just as people do not have an objective expectation of privacy in common areas of a multi-unit apartment building or a dumpster accessible to the public, a person does not have an objective expectation of privacy in files accessible through a network where "the military authorities encountered the files without employing any special means or intruding

into any area which [the defendant] could reasonably expect would remain private." *Id.* at 1341–42.

The *King* decision controls the outcome of this claim. Even assuming that Ms. Smith had a subjectively reasonable expectation of privacy in the contents of her cell phone, she did not have an objectively reasonable expectation of privacy in the content of her work computer, which included the backup copies of her personal phone. The City's Computer Policy provided that "[t]he City of Pelham . . . may access, copy, change, alter, modify, destroy, delete or erase [all data and data files residing on City computer systems or storage media]." (Doc. 13-5 at 2–3). Ms. Smith testified that she was aware of that policy. (Doc. 37-3 at 35).

The fact that Ms. Smith did not know that connecting her phone to her computer would cause the computer to back up the contents of the phone does not alter the analysis. In *King*, the defendant erroneously believed the files contained on his personal computer were protected by security safeguards. *King*, 509 F.3d at 1341. Nevertheless, he lost any reasonable expectation of privacy in the files on his computer once he connected them to a network by which others could access them "without employing any special means or intruding into any area which [the defendant] could reasonably expect would remain private." *Id.* at 1342. In this case, Ms. Smith did not know that connecting her phone to her work computer

would cause the computer to save a copy of her phone. Nevertheless, once the computer backed up her cell phone, the previously private data became accessible to her employer "without employing any special means or intruding into any area which [Ms. Smith] could reasonably expect would remain private." *Id.* It was saved on a City computer that was connected to a City network, and Detective McGill testified that anyone with administrative access to the network could access the cell phone back ups. (Doc. 37-3 at 123, 131–33).

Given that Ms. Smith lacked a reasonable expectation of privacy in the information contained on her work computer, including the backup of her personal cell phone, the court **GRANTS** the motion for summary judgment on Count Three in favor of Defendants and against Ms. Smith.

### 2. Count Four (Fourteenth Amendment Claim)

The Fourteenth Amendment to the U.S. Constitution states that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A procedural due process claim "requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Arrington v. Helms*, 438 F.3d 1336, 1347 (11th Cir. 2006). In addition, "the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural

deprivation does a constitutional violation actionable under section 1983 arise." *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc).

The City and Mr. Palmer do not dispute that Ms. Smith had a protected property interest in her employment with the City of Pelham or that her termination constituted state action. (*See* Doc. 61 at 14–18). Instead, they argue that she received constitutionally adequate process before her termination. (*Id.*). Ms. Smith responds that she did not receive adequate process before either her suspension or her termination. (Doc. 67 at 17–19).

As an initial matter, to the extent Ms. Smith's claim relates to Defendants' failure to comply with the City's own requirements before suspending an employee, an employer's failure to comply with its own rules does not, by itself, amount to a deprivation of due process. *See Smith v. Georgia*, 684 F.2d 729, 733 n.6 (11th Cir. 1982) ("[N]ot every violation by a state agency of its own rules rises to the level of a due process infringement."); *see also Yarbrough v. Decatur Hous. Auth.*, 905 F.3d 1222, 1230 (11th Cir. 2018) (William Pryor, J., concurring) ("Under our precedents, an agency's failure to follow its own procedural regulations gives rise to a due process violation only if the procedures the agency actually applied in lieu of those required by its regulations failed to provide what the Due Process Clause itself requires: notice and an opportunity to be heard.") (quotation marks omitted).

14

And Ms. Smith's claim that Defendants' failure to provide a pre-suspension hearing constituted a due process violation fails. Neither the Supreme Court nor the Eleventh Circuit has held that a public employee is entitled to a pre-suspension hearing, especially where the suspension is with pay, as Ms. Smith's suspension was. (Doc. 13-1 at 6; *see also* Doc. 37 at 8). Indeed, the Supreme Court has indicated in dicta that no hearing is necessary where the employer suspends the employee with pay. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 544–45 (1985) (footnote omitted) ("[I]n those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay."); *cf. Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (rejecting a categorical rule that a government employer may not suspend an employee without pay absent a pre-suspension hearing).

So Ms. Smith's claim must rest on the termination. She takes issue with both the termination itself and her appeal of the termination to the Personnel Board. (Doc. 67 at 17–19). Specifically, she argues that Defendants deprived her of due process because (1) Mr. Palmer terminated her on October 1 without providing her a hearing or a written statement of reasons; (2) the City refused to provide her with all the evidence she requested in preparation for her appeal to the Personnel Board and considered sealed evidence that it did not give to her; (3) the Personnel Board did not allow Ms. Smith to explore her allegation that the

termination was pretext for sex discrimination; and (4) the Personnel Board allowed Mr. Palmer's outbursts during the hearing. (Doc. 67 at 17–19). The court will address only the procedural adequacy of the appeal before the Personnel Board because, even assuming Mr. Palmer's "verbal termination" on October 1 deprived Ms. Smith of due process, the post-termination appeal process cured the violation. *See McKinney*, 20 F.3d at 1557.

Before a governmental employer may discharge an employee, that employer must provide "some kind of a hearing," *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985), which can be "something less than a full evidentiary hearing" but must include "oral or written notice of the charges against [the employee], an explanation of the employer's evidence, and an opportunity to present [the employee's] side of the story," *id.* at 545–46. "That hearing is not a mini-trial and 'need not definitely resolve the propriety of the discharge. It should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" *McKinney*, 20 F.3d at 1561 (quoting *Loudermill*, 470 U.S. at 545–46).

Either at or before the hearing, the City provided Ms. Smith with a copy of the Disciplinary Action Notification (doc. 59 at 54 ¶ 273), which informed Ms. Smith of the grounds on which her termination rested (doc. 13-6 at 2). At the

hearing, Ms. Smith's attorneys and the members of the Board questioned Mr. Palmer, Ms. Smith, Detective McGill, and other witnesses about the proffered grounds for her termination. (*See generally* Doc. 37-3). Ms. Smith was given an opportunity to explain her Facebook posts, the pictures on her work computer, and other evidence that Mr. Palmer and City relied on in concluding that she was working for a secondary employer while on the clock at the Police Department. (*Id.*). The hearing provided by the Personnel Board satisfied the requirements of due process: it provided her notice of the charges against her, an explanation of the employer's evidence, and an opportunity to present her side of the story. *Loudermill*, 470 U.S. at 545–46.

As for Ms. Smith's challenge to the Board's failure to provide her with all of the evidence she requested, nothing in *Loudermill* requires the employer to provide the employee with all of the evidence she requests. *Cf id.* at 545 (requiring only "an *explanation* of the employer's evidence") (emphasis added). Ms. Smith also asserts that the Board did not allow her to pursue her allegation that the termination was pretext for retaliation, but the record belies that assertion. The Board considered evidence about the temporal proximity between Ms. Smith's complaint against Mr. Palmer and Mr. Palmer's order to search Ms. Smith's work computer. (*See* Doc. 37-3 at 100–11).

Finally, to the extent Ms. Smith argues that the Personnel Board was biased and therefore deprived her of due process because it allowed Mr. Palmer's outbursts against her, her claim fails because she could have appealed the Board's decision to the state circuit court. "[E]ven if a plaintiff suffered a procedural deprivation at [her] administrative hearing, there is no procedural due process violation if the state makes available a means to remedy the deprivation." *Laskar v. Peterson*, 771 F.3d 1291, 1300 (11th Cir. 2014). The undisputed evidence shows that the City's Civil Service Law Handbook provides that the Personnel Board's decision is "subject to appeal by either party to the Circuit Court to review questions and whether or not the decision or order of the Board is supported by substantial evidence legally received by the Board." (Doc. 13-7 at 48). Accordingly, even if the Personnel Board was biased, the State's provision of an appeal process through the circuit court provided adequate process to cure any deprivation of due process that occurred during Ms. Smith's hearing. *McKinney*, 20 F.3d at 1562 ("The state is obligated only to make available the means by which the employee can receive redress for the deprivations.") (alteration and quotation marks omitted).

Because Ms. Smith received adequate process after her termination, the court **GRANTS** the motion for summary judgment in favor of Defendants and against Ms. Smith.

### 3. Count Five (Invasion of Privacy Claim)

Under Alabama law, a plaintiff asserting a wrongful-intrusion invasion of privacy claim must demonstrate that the defendant intruded into the plaintiff's "private activities in such manner so as to outrage or to cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Hogin v. Cottingham*, 533 So. 2d 525, 530 (Ala. 1988) (quotation marks omitted). The Alabama Supreme Court has indicated that where a police chief published a letter making allegations about an employee's work ethic, the chief had not invaded the employee's privacy because he had not "intruded upon her 'physical solitude or seclusion' by seeking any information that he did not properly have access to through his role as her supervisor in the police department." *Gary v. Crouch*, 867 So. 2d 310, 318 (Ala. 2003).

In Ms. Smith's second amended complaint she sought both compensatory and punitive damages (*id.* at 63), but in her response to the motion for summary judgment, she withdraws her request for punitive damages (doc. 67 at 21), leaving only her request for compensatory damages. Defendants contend that they are entitled to summary judgment on the invasion of privacy claim because they obtained only information that Mr. Palmer appropriately accessed as Ms. Smith's supervisor, and because she consented to the search of her work computer under the Computer Policy. (Doc. 61 at 24). Ms. Smith responds that her consent to

search the computer did not extend to searching her personal cell phone. (Doc. 67 at 14–15).

As the court discussed above, Ms. Smith was aware of the City's Computer Policy and consented to any search of her work computer. The fact that she did not know connecting her cell phone to her computer would result in personal photographs being saved on the City's network does not save her claim. Defendants accessed only her work computer; they did not intrude anywhere they were not allowed to access. Accordingly, the court **GRANTS** the motion for summary judgment on Count Five.

### III. CONCLUSION

The court **GRANTS** the motion for partial summary judgment and **ENTERS SUMMARY JUDGMENT** in favor of Defendants and against Ms. Smith on Counts Three, Four, and Five. (Doc. 60). The court **DENIES AS MOOT** Mr. Palmer's motion to dismiss. (Doc. 62). The court **DIRECTS** the Clerk to term Mr. Palmer as a defendant.

Counts One and Two remain and will proceed to discovery.

**DONE** and **ORDERED** this January 11, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE