Case 2:17-cv-01320-ACA   Document 137-1   Filed 04/22/22   Page 1 of 18
USCA11 Case: 20-13210   Date Filed: 12/10/2021   Page: 1 of 16

FILED
2022 Apr-22 AM 10:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 20-13210

_____

JENNIFER SMITH,

                              Plaintiff-Appellant,

*versus*

PELHAM, CITY OF,

                              Defendant-Appellee,

LARRY PALMER, et al.,

                              Defendants.

_____

Case 2:17-cv-01320-ACA   Document 137-1   Filed 04/22/22   Page 2 of 18
USCA11 Case: 20-13210   Date Filed: 12/10/2021   Page: 2 of 16

2                     Opinion of the Court                  20-13210

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:17-cv-01320-ACA

_____

Before ROSENBAUM, TJOFLAT, Circuit Judges, and MOODY,[*] District Judge.

JAMES S. MOODY, JR., District Judge:

    Jennifer Smith, a former employee for the City of Pelham, was fired after a forensic examination of her workplace computer revealed nude and pornographic photographs and that she had used her workplace computer to conduct work for her secondary job. Smith alleged, in relevant part, that the search of her computer violated the Fourth Amendment and Alabama privacy law. She also claimed that the search of her computer was unlawful retaliation because Chief of Police Larry Palmer ordered the search soon after he was informed of Smith's internal discrimination complaint against him. On summary judgment, the district court ruled in Defendants' favor on all of Smith's claims. Smith now appeals the ruling as to the privacy claims (under the Fourth Amendment and Alabama law) and the retaliation claim. After oral argument and

---

[*] The Honorable James S. Moody, Jr., United States District Judge for the Middle District of Florida, sitting by designation.

Case 2:17-cv-01320-ACA   Document 137-1   Filed 04/22/22   Page 3 of 18
USCA11 Case: 20-13210   Date Filed: 12/10/2021   Page: 3 of 16

20-13210                Opinion of the Court                 3

careful review of the record, we affirm the district court on the privacy claims and reverse on the retaliation claim. The City of Pelham is a governmental municipal corporation in Shelby County, Alabama. The city hired Smith in 2007, to act as the Administrative Assistant to the Chief of Police. Palmer became the Chief of Police in March 2015.

## I.    BACKGROUND[1]

The city allows employees to work secondary jobs with a supervisor's approval so long as that secondary job does not interfere with their employment with the city. On May 27, 2015, Smith requested permission from Palmer to work part-time for Oak Mountain Amphitheater for Live Nation. Palmer approved Smith's request that same day without comment. Janis Parks, the city's Human Resource Director, testified that employees could use their vacation time to work another job. Although earned time off could be used to work a secondary job, a city employee could not work for that second job during her city work hours.

In June 2015, Palmer became concerned that Smith was excessively using sick time and time off, particularly on Fridays and Mondays. The city does not have any rules against taking leave on Fridays or Mondays. Yet, in July 2015, Palmer ordered Holly

---

[1] Because Smith, the non-moving party, appeals the district court's summary judgment for the city, we discuss the facts in the light most favorable to her. *See Cowen v. Ga. Sec'y of State*, 960 F.3d 1339, 1342 (11th Cir. 2020).

Case 2:17-cv-01320-ACA   Document 137-1   Filed 04/22/22   Page 4 of 18
USCA11 Case: 20-13210   Date Filed: 12/10/2021   Page: 4 of 16

4                    Opinion of the Court                    20-13210

Coffman, an administrative employee, to audit Smith's daily time and attendance records. Coffman completed her audit near the end of August 2015. The audit revealed that Smith had used earned leave from the city to work for Oak Mountain Amphitheater on several occasions.

Around this same time but before Coffman completed her audit, Smith asked Palmer for permission to use compensatory time on September 17, and October 21, 2015. Palmer initially granted Smith's request, but when he learned that Smith was taking off September 17 to work an Oak Mountain Amphitheater concert, he retracted the approval. He told Smith that she could not use earned time to work a secondary job. Palmer never told Smith that he had any concerns about her work performance or work product.

A number of things occurred in September 2015. On September 2, 2015, Smith submitted to Parks a detailed memorandum titled "formal written complaint" in which she complained that Palmer engaged in sex discrimination in the workplace by allowing men but denying her the right to use her earned compensation time. The complaint included time sheets for four male officers who allegedly were allowed to use earned leave to work secondary jobs. Smith also complained that Palmer had told her and several other female employees that they looked good in new uniforms that he had ordered for them. The complaint expressed Smith's

20-13210               Opinion of the Court                    5

fear that she would be terminated for some reason as retaliation based on the filing of her complaint.

That same day, Parks sent Palmer a letter that informed him of the formal written complaint. Parks' letter stated, in relevant part, that Smith did not have to provide Palmer with a reason for using her compensatory time. Parks suggested, as a good faith effort to resolve the matter, that Palmer consider approving Smith's request for time off on September 17. The letter noted that Smith's right to file a complaint was protected under the city's No Harassment/No Discrimination/No Retaliation policy and that Palmer should not take any action against Smith in response to her complaint.

At some point between September 7 and 11, 2015, Palmer asked Detective Patrick McGill to conduct a forensic analysis of Smith's work computer, starting from May 2015. The city has a Computer/Email & Internet Use Policy (the "Computer Use Policy") governing employees' use of their work computers. The Computer Use Policy provides that "[e]ach employee shall be responsible for using the City's computer systems for job-related purposes only" and permits disciplinary action up to and including termination for "misuse" of the computers and network. "Misuse" is defined to include "accessing, viewing, downloading, or any other method for retrieving non-city related information including, but not limited to, entertainment sites or pornographic sites." The

policy also prohibits the "[d]ownloading of files without the express consent of the department head."

A Police Department Internal Memorandum sent to all employees prohibits the storage of "personal photos, music, documents or videos on City servers." The servers are for "police use only" and are not available for an employee's "storage of personal documents of any kind."

Palmer instructed Detective McGill to search for "anything related to [Smith's] job as far as secondary work or anything that was inappropriate during her work hours." Smith was not aware of Detective McGill's forensic analysis of her computer. Parks was not informed either. Detective McGill was a city employee and assigned to the U.S. Department of Homeland Security United States Secret Service Alabama Electronic Crimes Task Force. McGill had never been asked to perform a digital forensic examination of any other computer at the city.

Around this same time and while Parks was still investigating Smith's complaint, Palmer altered the rules concerning Smith's lunch hour. In response, on September 10, 2015, Smith sent an interoffice memorandum to Parks noting that Palmer had altered her longstanding lunch schedule which prevented Smith from picking her daughter up from school on the days when her mother was unavailable. Smith repeated to Parks that she felt Palmer was retaliating against her for her discrimination complaint.

20-13210               Opinion of the Court                    7

At midnight on Saturday, September 12, 2015, Detective McGill went to Smith's office and imaged Smith's work computer. As part of his review, Detective McGill found iPhone backups on Smith's computer. He then exported the iTunes backups and used a special forensic tool to look at the contents of Smith's iPhone backups. While reviewing Smith's photographs, McGill discovered nude images of Smith and others. McGill also discovered internet history showing that Smith had, during work hours, visited websites related to her secondary job with Oak Mountain Amphitheater. On or about September 23, 2015, McGill prepared his report and met with Palmer to discuss the results of his examination.

With respect to the iPhone backups, McGill testified that the only way the computer could have backed up Smith's cell phone was if she had plugged her phone into her computer. Smith admitted that she had connected her cell phone to her computer for work purposes, but she had not known that the computer would make backup copies of her phone. The backup copies were accessible to anyone on the City network with administrator privileges.

On September 24, 2015, Palmer asked Parks to join him for a meeting with Smith. Parks did not know that Palmer intended to place Smith on administrative leave with pay. At the time, Parks had no knowledge of any performance issues, work product issues, or any other problems related to Smith. During the meeting, Palmer informed Smith and Parks that he was conducting an internal investigation and Smith would be on administrative leave.

Case 2:17-cv-01320-ACA   Document 137-1   Filed 04/22/22   Page 8 of 18
USCA11 Case: 20-13210   Date Filed: 12/10/2021   Page: 8 of 16

8                    Opinion of the Court                   20-13210

Palmer did not tell Smith or Parks any information about the investigation. He did not inform them that Detective McGill had already delivered the results of his inspection of Smith's computer to Palmer.

On October 1, 2015, Palmer held another meeting with Smith and Parks and informed Smith that the police department had located nude photographs of her on her work computer and that was "conduct unbecoming." He offered Smith the choice of resigning or being terminated. The city has a progressive discipline policy for addressing performance issues and Palmer admitted that he had "no idea" why he did not follow any of the initial steps of that process. Smith chose not to resign and Palmer terminated her employment. Smith appealed Palmer's termination. The city's Personnel Board upheld the termination after a hearing.

## II.   STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment. *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). Summary judgment is appropriate when the evidence, viewed in favor of the non-moving party, "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

20-13210            Opinion of the Court                 9

### III.   DISCUSSION

### A.   Smith did not have a reasonable expectation of privacy in her workplace computer files.

The Fourth Amendment guarantees that people shall "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  "The Fourth Amendment's prohibition against unreasonable searches and seizures 'protects an individual in those places where [he] can demonstrate a reasonable expectation of privacy against government intrusion.'" *United States v. King*, 509 F.3d 1338, 1341 (11th Cir. 2007) (quoting *United States v. Cooper*, 203 F.3d 1279, 1283-84 (11th Cir. 2000)).  The Amendment applies "without regard to whether the government actor is investigating crime or performing another function," including acting as an employer.  *City of Ontario v. Quon*, 560 U.S. 746, 756 (2010).

An individual has a reasonable expectation of privacy only if she can establish both a subjective expectation of privacy in the object of the search and "that society is prepared to recognize as reasonable" the expectation of privacy.  *King*, 509 F.3d at 1341 (quotation marks omitted).  If an individual lacks a reasonable expectation of privacy, she cannot challenge the search.  *Id.*

In *King*, we held that a person lacked an objectively reasonable expectation of privacy in computer files that he inadvertently shared over a computer network.  509 F.3d at 1342.  The district

Case 2:17-cv-01320-ACA   Document 137-1   Filed 04/22/22   Page 10 of 18
USCA11 Case: 20-13210   Date Filed: 12/10/2021   Page: 10 of 16

10                     Opinion of the Court                    20-13210

court, relying on *King*, determined that Smith had no objectively reasonable expectation of privacy because she backed up her iPhone on the city's network. We conclude that the district court correctly applied *King* to the facts of this case. The defendant in *King* did not have a reasonable expectation of privacy in the contents of his laptop, which contained child pornography, because he connected the laptop to his military base's computer network. *Id.* at 1341-42. Similarly, Smith's iPhone backups were accessible on the city's network when she plugged her iPhone into her workplace computer.

"Given the great variety of work environments in the public sector, the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis." *O'Connor v. Ortega*, 480 U.S. 709, 718 (1987) (plurality opinion). "Within the workplace context, [the U.S. Supreme] Court has recognized that employees may have a reasonable expectation of privacy against intrusions by police." *Id.* at 716. However, "[p]ublic employees' expectations of privacy … may be reduced by virtue of actual office practices and procedures, or by legitimate regulation." *Id.* at 717.

Notably, Smith could not have had a subjective expectation of privacy because the city's Computer Use Policy provided that the city had a right to monitor all users of city computing systems. In other words, her expectation was reduced because the Computer Use Policy made it clear that the information contained on

Case 2:17-cv-01320-ACA   Document 137-1   Filed 04/22/22   Page 11 of 18
USCA11 Case: 20-13210   Date Filed: 12/10/2021   Page: 11 of 16

20-13210                Opinion of the Court                11

her computer could be monitored. Smith argues, however, that the privacy violation occurred, not when her computer was examined, but when Defendants intruded upon the contents of her personal cell phone. She argues that the city would not be permitted to conduct a warrantless search of her cell phone merely because it was located in her work office, so it could not search the electronic copy of her cell phone merely because it was saved on her work computer.

Smith's argument is unavailing because we are not faced with those facts. The search was of her computer, not her cell phone. Unbeknownst to Smith, when she backed up her iPhone, her cell phone data was also stored on her computer. Smith's misunderstanding or inadvertence does not control the outcome.

To understand our reasoning, it bears repeating that the city's Computer Use Policy provided that the city could access any data residing on the city's computer systems. Smith was aware of that policy. It is of no import that she did not know that connecting her phone to her computer would cause the computer to back up the contents of the phone for the same reasons that it was immaterial in *King* that he did not know that his computer could be accessed via the network. Once the computer backed up Smith's cell phone, the previously private data became accessible to her employer. It was saved on a city computer that was connected to a city network and Detective McGill testified that anyone with administrative access to the network could access the cell phone

backups.  We therefore affirm the district court on Smith's privacy claims because Smith lacked a reasonable expectation of privacy in the information contained on her work computer, including the backup of her personal cell phone.

B.  **The district court erred when it concluded that the forensic search of Smith's computer could not constitute an adverse employment action.**

Title VII prohibits an employer from retaliating against an employee for opposing an unlawful employment practice.  42 U.S.C. § 2000e-3(a).  We have consistently held that Title VII retaliation claims are analyzed under the *McDonnell Douglas* framework.  *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1142 (11th Cir. 2020) (en banc).  To establish a prima facie case of retaliation, a plaintiff must establish that (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) there was some causal connection between the two events.  *Id.* at 1134–35.

"Once the prima facie case is established, it creates a 'presumption that the adverse action was the product of an intent to retaliate.'"  *Id.* at 1135 (quoting *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009)).  "The burden of production then shifts to the employer to rebut the presumption by articulating a legitimate, non-discriminatory reason for the employment action."  *Gogel*, 967 F.3d at 1135.  If the employer meets this burden and articulates a reason that is non-discriminatory, "the presumption is rebutted."

Case 2:17-cv-01320-ACA   Document 137-1   Filed 04/22/22   Page 13 of 18
USCA11 Case: 20-13210   Date Filed: 12/10/2021   Page: 13 of 16

20-13210                Opinion of the Court                        13

*Id.* Then, the plaintiff must demonstrate that the employer's reason was "merely a pretext to mask [retaliatory] actions." *Id.* (citation omitted).

The district court erred when it concluded that the forensic search of Smith's computer could not constitute a materially adverse employment action. The proper standard in a retaliation case is the one set out by the Supreme Court in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 57 (2006), and confirmed by this circuit in *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008)—the retaliation is material if it "well might have dissuade[d] a reasonable worker from making or supporting a charge of discrimination." Under this standard, a jury must decide Smith's retaliation claim.

There were clearly tangible consequences of the computer search. Indeed, the search led to Smith's firing. And these consequences certainly would have dissuaded a reasonable worker from making a discrimination complaint. Yet, the district court concluded without any analysis that the forensic examination of Smith's computer did not constitute a materially adverse action because "[a] reasonable worker could not be dissuaded from making a charge of discrimination due to an investigation of which she had no knowledge." We disagree.

To hold that an action cannot be adverse if the employee is unaware of that action is without legal support. And that logic does not make sense when applied in other scenarios. For example,

what if an accused supervisor, who is aware of an internal complaint of discrimination against him, blackballed the complaining employee so that she was then excluded from certain workplace privileges, like a promotion, a bonus, a favorable transfer, etc.? Is it fair to then say that no retaliation occurred because the employee was unaware that the supervisor was tarnishing her reputation on the sly?

Notably, the standard established by *Burlington* is an objective one and depends on "a constellation of surrounding circumstances." 548 U.S. at 69. *Burlington* does not hold that an employee must be aware of each step taken in furtherance of a retaliatory scheme in order to suffer a materially adverse action. Even pre-*Burlington*, we have held that evidence of being black-balled may contribute to a finding of a materially adverse employment action. *Shannon v. BellSouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002).

We may stop our analysis here since the district court did not proceed beyond the adverse-action inquiry. However, we feel compelled to point out that, construing the facts in Smith's favor, which we must do, we conclude that Smith presented evidence sufficient for a jury to find that Palmer's reason for instigating the computer search was pretext for retaliation, i.e., "unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Case 2:17-cv-01320-ACA   Document 137-1   Filed 04/22/22   Page 15 of 18
USCA11 Case: 20-13210   Date Filed: 12/10/2021   Page: 15 of 16

20-13210               Opinion of the Court                15

About one week after learning of Smith's discrimination complaint against him and soon after Parks instructed Palmer to not take any action against Smith, Palmer instigated a secret forensic investigation of Smith's work computer. *See Munoz v. Selig Enterprises, Inc.*, 981 F.3d 1265, 1278 (11th Cir. 2020) ("close temporal proximity" between a protected activity and adverse action is evidence of pretext). Smith was fired as a result of that forensic examination. Palmer did not consult with Parks before he instigated the private search. Parks had informed Palmer that Smith's use of her earned time off was proper so there is also evidence of pretext to the extent that a jury could conclude there was no real basis to order the search because she was not violating any conditions of her employment.

Importantly, we must consider the evidence that Palmer knew at the time he made the decision to order the search. It is immaterial that he later discovered that Smith had used her workplace computer to conduct work for her secondary job. The district court did not consider this evidence in the proper context because of its conclusion that the search did not constitute an adverse employment action.

Other evidence of pretext is Palmer's failure to follow any of the initial steps of the progressive discipline process. When asked about this matter, Palmer stated that he had "no idea" why he didn't follow that process. A jury, not the court, must decide whether the computer examination was motivated by a desire to

16 Opinion of the Court 20-13210

retaliate.  Therefore, we reverse the district court as to this issue and remand for further proceedings.

### IV.   CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment in Defendants' favor on Smith's privacy claims and we reverse the district court's order granting summary judgment in the city's favor on Smith's retaliation claim.

**AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 10, 2021

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 20-13210-DD
Case Style: Jennifer Smith v. City of Pelham
District Court Docket No: 2:17-cv-01320-ACA

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against the appellee.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Bradly Wallace Holland, DD at 404-335-6181.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna H. Clark
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs